UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
|    MICHAEL GINALDI, | : | CHAPTER 11 |
| | : | |
|    Debtor. | : | Bky No. 11-15507 ELF |
| | : | |

# O R D E R

**AND NOW**, the debtor, Michael Ginaldi ("the Debtor") having filed an Application for an Order Approving the Retention of Addison Wolfe Real Estate as Real Estate Broker ("the Application") on August 12, 2011 (Doc. #20);

**AND**, TD Bank having filed an objection to the Application asserting that Addison Wolfe Real Estate ("Addison Wolfe") is a creditor of the bankruptcy estate, is not a disinterested person and therefore, is ineligible for retention under 11 U.S.C. §327(a) (see Doc. #21);

**AND**, a hearing on the Application having been held on September 7, 2011;

**AND**, as a result of the hearing, the court having entered the Order dated September 7, 2011 (Doc. #41):

    A. setting forth a briefing schedule on the Application; and,

    B. allowing the parties to file stipulated facts and submit documents relevant to the dispute;

**AND**, the parties having filed a Stipulation of Facts (Doc. #45), and memoranda of law in support of their respective legal positions (Doc. #'s 57, 58, 62);[1]

---

[1] Although not a party to the dispute, Addison Wolfe filed a Memorandum of Law in support of the Debtor's Application. I have broad discretion to permit an amicus curiae to participate in
(continued...)

-1-

* * * *

**AND**, the following facts being undisputed, based either on the parties' Stipulation of Facts or the court record:

1. Addison Wolfe Real is a Pennsylvania Licensed Real Estate Brokerage firm with its principal office at 550 Union Square Drive, New Hope, PA 18938.

2. On March 9, 2011, Addison Wolfe entered into a Listing Contract with the Debtor and his spouse, Leigh Ann Ginaldi (collectively, "the Ginaldis"), for the marketing of the residence at 9 Great Hills Road, Upper Makefield, Bucks County, Pennsylvania ("the Property") with a term ending September 8, 2011.

3. Paragraph 7 of the Listing Agreement, (Listing Agreement ¶7) (Doc. #45)., provides that Addison Wolfe is entitled to a broker's fee upon the occurrence of certain conditions quoted below:

   > A. Seller will pay Broker's Fee if Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's salespersons, Seller, or any other person or broker, at the listed price or any price acceptable to Seller.
   >
   > B. Seller will pay Broker's Fee if a ready, willing, and able buyer is found by Broker or by anyone, included Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller.
   >
   > C. Seller will pay Broker's Fee if negotiations that are pending at the Ending Date of this Contract result in a sale.

---

¹(...continued)
a pending action. E.g., Liberty Resources, Inc. v. Phila. Housing Authority, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005); Waste Mgmt., Inc. v. City of York, 162 F.R.D. 34, 36 (M.D. Pa. 1995).

    D. Seller will pay Broker's Fee for a sale that occurs after the Ending Date of this Contract IF:

        (1) The sale occurs within 30 [days] of the Ending Date, AND

        (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND

        (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.

4. Addison Wolfe found an interested buyer for the Property after which the Ginaldis entered into an agreement of sale ("the Agreement of Sale") with James and Kathy Russell (collectively, "the Russells"), on May 29, 2011.

5. The scheduled Settlement Date for closing on the sale of the Property was July 18, 2011.

6. The Debtor filed a chapter 11 bankruptcy petition on July 12, 2011.

7. Settlement did not occur on July 18, 2011 due to the inability of the Ginaldis to convey clear title caused by their inability to satisfy all liens on the property from the sales proceeds or otherwise.[2]

8. No agreement, written or otherwise, to extend the Settlement Date was made on or before July 18, 2011.

9. Addison Wolfe continued its efforts to market the property after July 18, 2011.

10. On August 12, 2011, the Debtor filed the Application to Employ Addison Wolfe Real Estate as real estate broker on behalf of the bankruptcy estate.

---

[2] This fact is taken verbatim from the Stipulation of Facts. However, I consider it extremely likely that the filing of the bankruptcy case itself and the absence of a bankruptcy court order authorizing the sale independently prevented the transaction from closing on July 18, 2011.

11. On August 15, 2011, the Ginaldis and the Russells executed a written agreement renewing the Agreement of Sale dated May 29, 2011.

12. Neither Addison Wolfe, nor any person associated with Addison Wolfe, has an association or affiliation with either the Ginaldis or the Russells, other than in connection with the real estate transaction described above.

13. Neither Addison Wolfe nor any person associated with Addison Wolfe has any claim against the Debtor other than any claim that may have existed under the Listing Contract or as a result of the Agreement of Sale.

\* \* \* \*

**AND**, 11 U.S.C. §327(a) providing that a trustee or a debtor in possession,[3] may employ one or more professional persons to represent or assist the trustee in carrying out the trustee's duties to the estate;[4]

**AND**, before a professional may be approved by the court, §327(a) imposing a two-part

---

[3] Pursuant to §1107(a), a debtor in possession is entrusted with the rights and powers of a trustee and is required to perform all the functions and duties of a trustee subject to certain exceptions.

[4] Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

test that requires that a professional: (1) must not hold or represent an interest adverse to the estate,[5] and (2) must be a disinterested person;

**AND,** a "disinterested person" being defined as a person who "is not a creditor, an equity security holder, or an insider" of the debtor, 11 U.S.C. §101(14);

**AND**, a "creditor" being defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. §101(10) (emphasis added);

**AND**, a "claim" being defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured, 11 U.S.C. §101(5) (emphasis added);"[6]

**AND**, Fed. R. Bank. P. 2014 requiring the applicant to state the specific facts showing inter alia, the necessity of the employment,[7] the reasons for the selection, the professional

---

[5] The Bankruptcy Code does not define the term "adverse interest" but it has been interpreted to mean "(1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is the rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate." In re Shat, 2009 WL 7809004, *5 (B.A.P. 9th Cir. 2009).

[6] A claim is "contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." In re Ford, 125 B.R. 735, 736 (E.D. Tex. 1991).

[7] Thus, the bankruptcy court has the obligation to determine whether retention of the professional is in the best interest of the estate. See In re Camann, 2000 WL 33679428, *3 (Bankr. D.N.H. May 2, 2000); In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

services to be rendered and disclosure of all the person's connections with the debtor, creditors, and other parties in interest;

**AND**, Fed. R. Bankr. P. 2014 also requiring that the professional to be employed submit as part of the retention application, a verified statement "setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any other person to be employed in the office of the United States trustee."[8]

**AND**, the applicant bearing the burden of establishing, by a preponderance of the evidence, that a professional should be employed, In re Bigler, LP, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010);

* * * *

**AND**, TD Bank having objected to the Application of Addison Wolfe, arguing that Addison Wolfe is not "disinterested" within the meaning of 11 U.S.C. §101(14);

**AND**, more specifically, TD Bank arguing that when the bankruptcy case was filed, Addison Wolfe was a creditor holding a contingent claim against the bankruptcy estate;[9]  **AND**,

---

[8] "Full disclosure is an essential prerequisite for both employment and compensation." Shat, 2009 WL 7809004, at *6. The professional is charged with the duty to make a full and candid disclosure of all connections with the debtor and its creditors regardless of how insignificant they may appear. Id.; Jacques H. Geisenberger, Jr., P.C. v. DeAngelis, 2011 WL 4458779, *6 (M.D. Pa. Sept. 23, 2011). Failure to disclose all pertinent facts may result in disqualification of the professional. In re Kings River Resorts, Inc., 342 B.R. 76, 86 (Bankr. E.D. Cal. 2006).

[9] TD Bank argues that the Debtor's entry into an Agreement of Sale with the buyers (with
(continued...)

Addison Wolfe asserting that it does not hold a contingent claim;[10]

**AND**, the court concluding that Addison Wolfe is a contingent creditor of the Debtor pursuant to the pre-petition Listing Agreement and therefore, is not disinterested as required by 11 U.S.C. §327(a);[11]

---

[9](...continued) a scheduled closing date of July 18, 2011), rendered Addison Wolfe a creditor holding a contingent claim against the bankruptcy estate because the Listing Agreement provided that Addison Wolfe would be paid a brokerage commission if Addison Wolfe found a "ready, willing and able buyer" whose offer was accepted by the Debtor, (see Listing Agreement ¶7B). Consequently, according to TD Bank, Addison Wolfe cannot satisfy the "disinterestedness" requirement under §327(a).

TD Bank also asserts that Addison Wolfe withheld from the court certain material facts relevant to its retention. TD Bank contends that the Debtor failed to disclose that Addison Wolfe found a buyer who entered into an Agreement of Sale and argues that these facts should have been disclosed to the court in the Application as it is material to the analysis of whether Addison Wolfe meets the requirements for retention under §327(a). I do not decide, at this time, whether the non-disclosure mandates denial of Addison Wolfe's retention.

[10]  Addison Wolfe contends that the buyers were not "ready, willing, and able" because the buyers agreed to purchase the Property only if the Property was sold free and clear of any liens and until then, the buyers were not willing purchasers. Addison Wolfe asserts that, notwithstanding the apparent plain language of the Agreement, in common practice, paragraph 7(B) creates a right to payment of the broker's commission only where (1) there are no conditions precedent to settlement and (2) the seller has wrongfully defaulted on the transaction. Addison Wolfe argues that the Debtor's ability to convey clear title was a condition precedent to completion of the sales transaction and because the Debtor was unable to do so, no right to payment arose in this case.

[11]  I find it unnecessary to resolve the debate as to whether a present right to payment under ¶7B of the Listing Agreement exists. See nn. 10, 11. It is immaterial which interpretation is correct because under either reading of the contract, Addison Wolfe has at least a contingent claim under ¶7C the Listing Agreement.

When the Debtor filed his bankruptcy petition, a closing was scheduled. At that point, if Addison Wolfe did not have a present right to payment, its right to payment of the commission was at least dependent upon a future event (i.e., the closing). See Ford, 125 B.R. at 736 ("contingent claims are claims which depend either as to their existence or their amount on some future event which may not occur at all or may not occur until some uncertain time"). Further, even though the July 18th closing did not occur, Addison Wolfe's contingent right to payment under Paragraph 7(C) of the Listing Agreement continued to exist. For example, if, at any time in the future, the Debtor were to close the transaction

(continued...)

**AND**, it appearing that Addison Wolfe has not waived its pre-petition claim[12] and therefore, continues to be "not disinterested" within the meaning of §101(14) and §327(a), see United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994) (absent waiver of pre-petition claim, applicant is not disinterested and may not be employed pursuant to §327(a));

It is therefore **ORDERED** that the Debtor's Application for an Order Approving the Retention of Addison Wolfe Real Estate as Real Estate Broker is **DENIED WITHOUT PREJUDICE**.[13]

---

[11](...continued) with the buyer found by Addison Wolfe, the commission rights could be triggered. See generally In re Griffin, 313 B.R. 757, 763 n.4 (Bankr. N.D. Ill. 2004) (dependency of post-petition event does not prevent a debt from arising pre-petition). In these circumstances, I conclude that Addison Wolfe's holds a contingent claim and is not disinterested.

[12]     To become disinterested, a professional may waive its pre-petition claims. See In re Pillowtex, Inc., 304 F.3d 246, 253 (3d Cir. 2002); In re Am. Home Mortg. Holdings, Inc., 411 B.R. 169, 172 & 180 n.41 (Bankr. D. Del. 2008); In re LKM Indus., 252 B.R. 589, 595 (Bankr. D. Mass. 2000).

[13]     The Application has been denied without prejudice because the defect in the Application is potentially curable by a formal waiver of Addison Wolfe's pre-petition claim. However, should the Debtor file a renewed application to retain Addison Wolfe, he should be prepared to address two issues.

First, the Debtor should consider whether there is any benefit to the estate in retaining Addison Wolfe where it appears that all of the material services provided by Addison Wolfe were performed pre-petition. If the Debtor does not retain Addison Wolfe and closes the transaction with the existing buyer, Addison Wolfe will have a pre-petition claim against the estate based on its commission rights under the Listing Agreement, i.e., a general unsecured claim, rather than a priority administrative expense. Depending upon whether a plan is confirmed and the amount of the distribution made to general unsecured creditors, I realize that this may result in little or no payment to Addison Wolfe and therefore, may be perceived as a harsh result from its perspective. However, any professional compensation arrangement based on a right to a commission carries an inherent risk of nonpayment if the professional's client files a bankruptcy case after the professional has provided all of the material services in the engagement, but before payment of the commission. Such a professional is in no different position than any other unpaid vendor and the Bankruptcy Code contains no provision granting priority

(continued...)

**Date:** **November 16, 2011**

      **ERIC L. FRANK**
      **U.S. BANKRUPTCY JUDGE**

---

    [13](...continued)
status to such a professional. To the extent this may be unfair, it is an issue that only Congress can address.

    Second, the Debtor should consider whether the disclosure in the Application by the Debtor and Addison Wolfe acts as an independent bar to employment. See nn. 8-9 supra.